UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE PHOENIX INSURANCE COMPANY,

Plaintiff(s),

-against-

SCOTTSDALE INSRUANCE COMPANY,

Defendant(s).

**MEMORANDUM & ORDER**
**24-CV-4939 (NGG) (CHK)**

NICHOLAS G. GARAUFIS, United States District Judge.

On July 16, 2024, Plaintiff The Phoenix Insurance Company ("Travelers") brought this action against Defendant Scottsdale Insurance Company ("Scottsdale"), seeking "a declaration that Scottsdale is obligated to defend and to indemnify" Aurora Contractors, Inc. ("Aurora") in *GGP Staten Island Mall, et al. v. Aurora et al.*, Index No. 150180/2021 ("The Underlying Action"). (*See generally* Compl. (Dkt. 1); Amended Compl. (Dkt. 19).) Now before the court are the parties' cross-motions for summary judgment. (Dkts. 37, 39.) On May 5, 2026, the court referred these motions to Magistrate Judge Kaminsky for a Report and Recommendation ("R&R"), which he issued on August 25, 2026. (Text Order Dated 05/05/2026; Report and Recommendations (Dkt. 53) ("R&R").) Judge Kaminsky recommended granting Plaintiff's motion for partial summary judgment and denying that of defendant. (R&R at 15.) For the reasons explained below, the court agrees and ADOPTS the R&R in full.

## I. BACKGROUND[1]

In October 2016, third party Aurora contracted with GGP Staten Island Mall, LLC ("GGP") to complete a construction project. (R&R at 1-2.) Aurora then engaged ADCO Electrical Corp.

[1] This short summary of the factual background is drawn from the R&R and the parties' undisputed 56.1 statements.

("ADCO"), a subcontractor, to install an electrical distribution system as part of the project. (*Id.*) After a duct exploded and damaged mall property, GGP sued Aurora for breach of contract, and Aurora brought a third-party complaint against ADCO, alleging that ADCO, not Aurora, was responsible for the damage. (*Id.*)

Scottsdale insured ADCO. (*Id.* at 3.) As part of the subcontracting agreement between Aurora and ADCO, ADCO was obligated to "include Aurora as an additional insured." (*Id.* at 5.) Aurora is separately insured by Travelers. (*Id.* at 2.) The instant dispute arises from these insurance agreements and whether Scottsdale's policy applies and is primary to Traveler's, creating a duty for Scottsdale to defend Aurora in the underlying action.[2] (*Id.* at 5.)

## II. STANDARD OF REVIEW

In reviewing a report and recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If no objections have been made, the district court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed R. Civ. P. 72(b) advisory committee's note to 1983 amendment; *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (summary order) ("Where . . . a party receives clear notice of the consequences of not objecting to a report and recommendation, the party's failure to object to any purported error or omission in a magistrate judge's report results in the district court's review

[2] Scottsdale "does not dispute that the Travelers Policy is in excess to the Scottsdale Policy *if* the [c]ourt finds that Aurora is entitled to coverage under the Scottsdale policy." (*Id.* at 14 (emphasis added).) The court finds as much here, thus resolving both of these issues.

only for clear error.").[3] Clear error is "found only when, upon review of the entire record, the [c]ourt is left with 'the definite and firm conviction that a mistake has been committed.'" *United States v. Veeraswamy*, 765 F. Supp. 3d 168, 180 (E.D.N.Y. 2025) (quoting *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006)).

## III. DISCUSSION

Neither party has objected to the R&R, and the time to do so has passed. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Therefore, the court reviews the R&R for clear error. *Colvin*, 734 F. App'x at 758. (*See also* R&R at 15 ("Objections to this [R&R] must be filed within fourteen (14) days of service. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts.").) After reviewing the record, the court finds the R&R to be well-reasoned and free of any clear error. Consequently, the court adopts the R&R in full.

An insurer's duty to defend is "exceedingly broad" and arises when the complaint "gives rise to the reasonable ***possibility*** of recovery under the policy." (R&R at 7 (collecting cases) (emphasis added).) As explained in detail in the R&R, the crux of the dispute on these motions turns on (1) whether the conduct in the underlying complaint qualifies as an "occurrence" triggering coverage under the relevant policy, and (2) whether the "professional services" exclusion negates Scottsdale's duty to defend. (R&R at 7, 10.) Assuming Aurora is entitled to coverage under Scottsdale's policy, Scottsdale does not dispute that its policy is primary to that of Traveler's and thus concedes this point. (*Id.* at 14.) Regarding (1), since the complaint alleges damage to GGP property broadly instead of Aurora's work product alone, the allegations are sufficient to plead an "occurrence" causing

[3] When quoting cases and the R&R, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

property damage under the policy, establishing Scottsdale's duty to defend. (*Id.* at 9.) As for (2), since at least some of the allegations in the complaint involve general conduct arising from "normal powers of supervision and observation," the professional services exclusion fails to rule out a reasonable possibility of coverage. (*Id.* at 11-12.)

Ultimately, given the broad duty to defend and the reasons explained above and in the R&R, Scottsdale has not established that there was no possibility of coverage or "absolve[d]" itself of its duty to defend Aurora. (*Id.* at 14.) Consequently, Travelers is entitled to partial summary judgment.

**IV. CONCLUSION**

For the foregoing reasons, the R&R is ADOPTED in full. Plaintiff's Motion for Partial Summary Judgment is therefore GRANTED and Defendant's motion is DENIED. The court DECLARES that, with respect to the Underlying Action, (1) Defendant has a duty to defend Aurora, (2) Scottsdale's coverage obligations to Aurora are primary and Travelers' coverage obligations are excess, and (3) Defendant Scottsdale is obligated to reimburse the expenses incurred by Travelers in defending Aurora in the Underlying Action. The court GRANTS Plaintiff's request for an award of its expenses incurred in defending the Underlying Action, and Plaintiff may make an application to the court for a determination of the amount to be awarded. This expense determination is REFERRED to Magistrate Judge Kaminsky for report and recommendation.

The parties are DIRECTED to contact Magistrate Judge Kaminsky regarding next steps in this case.

SO ORDERED.

Dated: Brooklyn, New York
September 29, 2026

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE PHOENIX INSURANCE COMPANY,

Plaintiff,

-against-

SCOTTSDALE INSURANCE COMPANY,

Defendant.

**REPORT AND RECOMMENDATION**

24-CV-4939 (NGG) (CHK)

**CLAY H. KAMINSKY, United States Magistrate Judge:**

Plaintiff The Phoenix Insurance Company ("Travelers") filed this action against Defendant Scottsdale Insurance Company ("Scottsdale") seeking a declaration that Scottsdale has a duty to defend Aurora Contractors, Inc. ("Aurora") in an underlying action brought in the Supreme Court of New York, County of Richmond (the "Underlying Action"). Before the Court are Travelers' and Scottsdale's cross-motions for summary judgment. ECF Nos. 37, 39. Those motions were referred to me by the Honorable Nicholas G. Garaufis for a report and recommendation. For the reasons that follow, I respectfully recommend granting Travelers' motion for summary judgment and denying Scottsdale's motion for summary judgment.

## I. Background

### A. The Underlying Action

In October 2016, Aurora entered into a construction agreement with GGP Staten Island Mall, LLC ("GGP") to provide services as a general contractor for a

construction project at the mall.[1] As part of the project, Aurora contracted with ADCO Electrical Corp. ("ADCO") to furnish and install a complete power distribution system.

In July 2018, a busway duct on the mall's roof exploded, causing damage to nearby ducts and other GGP property, also leaving the mall without power. Following the incident, GGP sued Aurora for breach of contract and also asserted claims against other entities involved in the project (hereinafter, the "Underlying Action"). Specifically, GGP alleges that Aurora breached certain warranties and responsibilities owed to GGP as part of the contract, causing damages including repair costs and lost profits. *See* Underlying Complaint ¶¶ 42–47, ECF Nos. 37-7, 39-2. Aurora filed a third-party complaint against ADCO in the Underlying Action, alleging that ADCO was responsible for the damage caused by the defective duct. ADCO filed a counterclaim against Aurora for breach of contract and a separate third-party complaint against several companies that allegedly sold ADCO defective equipment.

**B. The Travelers and Scottsdale Policies**

Travelers issued Aurora a commercial general liability insurance policy effective from September 2017 to September 2018. *See* Travelers Policy, ECF No. 37-3. The policy provided Aurora with coverage for property damage caused by an accident. However, the policy specifies that its coverage is only in excess over "any other insurance, whether primary, excess, contingent or on any other basis, that is

[1] The following facts drawn from the parties' Rule 56.1 statements and are undisputed.

available as an additional insured under any other policy, including any umbrella or excess policy." *Id.* at 46.

Scottsdale issued ADCO a commercial general liability insurance policy effective from August 2017 to August 2018. *See* Scottsdale Policy, ECF No. 39-10. In relevant part, the Scottsdale insurance agreement provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

*Id.* at 26. The Scottsdale Policy further explains its additional insurance coverage policy:

> A. Section II — Who Is An Insured is amended to include as an additional insured:
>
> 1. Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy; and
>
> 2. Any other person(s) or organization(s) you are required to add as an additional insured under the contract or agreement described in paragraph 1[ ] above.

> Such person or organization is an additional insured only with respect to liability for bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> a. Your acts or omissions; or
>
> b. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured.

*Id.* at 46. The policy further provides that it is "primary to and will not seek contribution from any other insurance available to an additional insured" provided that the parties "agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available." *Id.* at 42.

Scottsdale's coverage is limited by several policy exclusions. As relevant here, the policy is subject to a "Professional Liability" exclusion. That exclusion provides:

> B. This insurance does not apply to:
>
> 1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional architectural, engineering or surveying services, including:
>
>    a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
>
>    b. Supervisory, inspection, architectural or engineering activities.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury",

> involved the rendering of or failure to render any professional architectural, engineering or surveying services.

*Id.* at 46.

### C. Aurora and ADCO's Contract

Aurora and ADCO entered into a subcontracting agreement in April 2017, where ADCO agreed to furnish and install a complete power distribution system. As part of the parties' agreement, ADCO was required to purchase and maintain commercial general liability insurance and include Aurora as an additional insured. Under the subcontracting agreement, coverage for Aurora as an additional insured applied as "primary and non-contributory insurance before any other insurance or self-insurance." Aurora-ADCO Contract, ECF No. 37-6, at 59.

### D. Procedural History

Travelers filed the instant action on July 16, 2024 seeking a declaration that Scottsdale is required to defend and indemnify Aurora in the Underlying Action based on the terms of Aurora and ADCO's contract and Scottsdale's policy issued to ADCO. *See generally* Compl., ECF No. 1; Amended Compl., ECF No. 19. Specifically, Travelers seeks reimbursement for costs incurred to defend Aurora in the Underlying Action and a declaration that the Travelers policy issued to Aurora is excess to the Scottsdale policy. Scottsdale filed an answer to the amended complaint on November 12, 2024, denying that is has a duty to defend Aurora and asserting several affirmative defenses. *See* ECF No. 20. The parties have now filed cross-motions for summary judgment, and Judge Garaufis has referred those motions to me for a report and recommendation. *See* May 5, 2026 Order.

## II. Legal Standards

Summary judgment is appropriate when a movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant has the burden of showing that there are no genuine disputes of material fact. *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020). In deciding the motion, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The party opposing summary judgment can defeat the motion by identifying the facts and evidence that demonstrate a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Where, as here, both parties move for summary judgment, 'each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.'" *Gen. Star Indem. Co. v. Driven Sports, Inc.*, 80 F. Supp. 3d 442,

449 (E.D.N.Y. 2015) (quoting *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010)).

## III. Analysis

Under New York law—which both parties agree applies—an insurer's duty to defend is "exceedingly broad." *Certain Underwriters at Lloyd's, London v. Travelers Casualty Ins. Co. of Am.*, 664 F. Supp. 3d 288, 293 (E.D.N.Y. 2023). This duty is triggered where "the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Emps. Ins. Co. of Wausau v. Harleysville Preferred Ins. Co.*, 726 F. App'x 56, 60 (2d Cir. 2018) (summary order) (quoting *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991)). This duty is broader than the duty to indemnify and exists when "the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased." *Certain Underwriters*, 664 F. Supp. 3d at 293. (quoting *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73 (1989)). Thus, a court must first evaluate the scope of coverage the insurer agreed to provide to determine whether the underlying complaint could create any "factual or legal basis on which the duty to defend may attach." *Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*, 547 F. Supp. 3d 381, 394 (S.D.N.Y.), *opinion corrected on other grounds*, 556 F. Supp. 3d 301 (S.D.N.Y. 2021).

### A. Scottsdale's duty to defend Aurora extends to the Underlying Action.

Like many commercial general liability policies, Scottsdale's policy limits coverage to suits seeking damages that its insured—or additional insured—is

obligated to pay because of an "occurrence" that leads to "bodily injury" or "property damage." Scottsdale Policy at 26; *see, e.g.*, *Granite State Ins. Co. v. Rainier Arms LLC*, 773 F. Supp. 3d 24, 31–32 (S.D.N.Y. 2025) (evaluating nearly identical commercial general liability policy). Commercial general liability policies, like the one presented here, "generally do not afford coverage for breach of contract claims." *Godfrey v. Exec. Risk Indem. Inc.*, 609 F. Supp. 3d 301, 305 (S.D.N.Y. 2022) (citing *Mid-Hudson Castle, Ltd. v. P.J. Exteriors, Inc.*, 738 N.Y.S.2d 96, 97–98 (2d Dep't 2002)); *see J.Z.G. Res., Inc. v. King,* 987 F.2d 98, 103 (2d Cir. 1993) ("The coverage [provided by a commercial general liability policy] is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." (quotation omitted)). Scottsdale argues that there was no "occurrence" as defined by the policy because the underlying claims are based in contact law and only allege damage to Aurora's own work.

Although claims for breach of contract or warranty are not typically considered a covered "occurrence," such claims may still be covered if "as a result of the breach, the defective product damages property other than the defective product itself." *Franco Belli Plumbing & Heating & Sons, Inc. v. Liberty Mut. Ins. Co.*, No. 12-CV-128, 2012 WL 2830247, at *6 (E.D.N.Y. Apr. 19, 2012); *see J.Z.G. Res,* 987 F.2d at 102–03 (analyzing New York cases and holding that an event was only an "occurrence" where "the claim against the insured was not simply one for faulty workmanship, but rather for consequential property damage inflicted upon a third

party as a result of the insured's activity"); *cf. Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co.*, 961 F.2d 387 (2d Cir. 1992) (no "occurrence" where faulty steering mechanisms in tugboats built and sold by insured did not cause damage to property other than insured's product). In such cases, the insurer is "obligated to defend claims seeking compensation for damage to that other property." *Franco Belli*, 2012 WL 2830247, at *7.

Here, although the Underlying Action against Aurora only asserts claims for breach of contract, GGP alleges more than damage to Aurora's work product alone—it also seeks recovery based on damage to other GGP property. Scottdale argues that there is no "occurrence" because, as the general contractor, the entire project is considered Aurora's work product and thus only Aurora's work was damaged by the accident. But this argument is contradicted by the Underlying Complaint, which alleges that GGP property was damaged *in addition to* Aurora's construction project. Underlying Compl. ¶¶ 35–36. The cases Scottsdale cites to support its argument concern only damage to the contractor's work product. *See Eurotech Const. Corp. v. QBE Ins. Corp.*, 26 N.Y.S.3d 703, 703 (1st Dep't 2016); *Transportation Ins. Co. v. AARK Const. Grp., Ltd.*, 526 F. Supp. 2d 350, 357 (E.D.N.Y. 2007). Because the duty to defend is broadly construed, even if the court with jurisdiction over the Underlying Action later determined that the only property damaged was part of Aurora's own work product, the mere assertion in the complaint that GGP property was damaged is sufficient to trigger the duty to defend. *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73 (1989) ("If the complaint contains any facts or allegations which

bring the claim even potentially within the protection purchased, the insurer is obligated to defend." (internal citation omitted)). Because the duct explosion is alleged to have damaged property other than Aurora's own property, it was an "occurrence" causing "property damage" under the policy and Scottsdale has a duty to defend Aurora in the Underlying Action, unless an exclusion applies.

### B. The professional services exclusion does not negate Scottsdale's duty to defend.

Scottsdale next asserts that even if the duct explosion qualifies as an "occurrence," the professional services exclusion of the policy applies. That exclusion precludes coverage for occurrences arising from "rendering of or failure to render any professional services" including "engineering, architectural, or surveying services" and the "supervision, hiring, employment, training or monitoring of others" involved in engaged services. Scottsdale Policy at 46. The policy explains that these services include "[p]reparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications" and "[s]upervisory, inspection, architectural or engineering activities." *Id.*[2]

When an exclusion clause is relied upon to deny coverage, "the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." *Town of Massena v. Healthcare*

[2] A separate policy endorsement in the contract explains: "Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor." Scottsdale Policy at 57.

*Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444 (2002). Exclusion clauses are "subject to strict construction and must be read narrowly." *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006).

With respect to the professional services exclusion, courts have explained that the exclusion "does not apply to every act done by a professional." *Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 555 (S.D.N.Y. 2021). Under New York law, the central question is whether the professional service at issue involves "special acumen and training," *Those Certain Underwriters at Lloyd's, London v. DVO, Inc.*, 473 F. Supp. 3d 236, 256 (W.D.N.Y. 2020), rather than "normal powers of supervision and observation." *Vitality Physicians*, 537 F. Supp. at 555 (quoting *Reliance Ins. Co. v Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 262 A.D.2d 64, 691 N.Y.S.2d 458, 460 (1999)).

Here, Scottsdale fails to establish that the professional services exclusion leaves no possibility of coverage. The Underlying Action asserts breach of contract claims against Aurora related to Aurora's warranty that it would use materials and equipment "free from faults and defects," that its work would "comply with all applicable laws, rules, regulations, ordinances and permits," and that its work would also be free from defects. Underlying Compl. ¶ 43. Further, GGP asserts that Aurora breached the part of the contract that provided Aurora would take responsibility for the acts, omissions, and performance of its subcontractors. *Id.* ¶¶ 44–45. Claims against Aurora's subcontractors include, *inter alia*, claims for negligent design, failure to supervise, and failure to inspect, as well as more general claims of failure

to warn, failure to take remedial action, and "[o]therwise failing to use reasonable care and act reasonably under the circumstances." *Id.* ¶¶ 48–95.

Several of these allegations leave open the possibility that Aurora could be found liable for conduct beyond the scope of "professional services." For example, Aurora could be found liable for breaching its warranty to use materials free from faults and defects. Or Aurora could be held liable for its failure to ensure its subcontractors remain in compliance with relevant safety laws and standards. These contractual obligations arise not from Aurora's "engineering acumen" but rather from its "normal powers of supervision and observation" as a general contractor. *Reliance Ins.*, 262 A.D.2d at 65 (failure to ensure contractor complied with contract and safety laws were not related to general contractor's rendering of professional services).

Although the Underlying Complaint contains allegations related to professional services provided by the subcontractors (for which Aurora could ultimately be held liable), it also includes more general allegations against those subcontractors for failure to warn and failure to take remedial action. Like the claims against Aurora for breach of warranty, the allegations underlying these claims relate more to general project supervision and workplace safety than expertise in architecture, engineering, or surveying. *See First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc.*, 48 F. Supp. 3d 158 (D. Conn. 2014), *aff'd*, 660 F. App'x 30 (2d Cir. 2016) (holding that general allegations of failure to warn and failure to ensure a safe work area were not covered under similar professional services exclusion). Because the Underlying Complaint contains claims that arguably arose

from something other than a failure to render professional services, Scottsdale has a duty to defend Aurora in the Underlying Action. *See Suez Treatment Sols., Inc. v. ACE Am. Ins. Co.*, No. 20-CV-6082 (MKV), 2022 WL 954601 (S.D.N.Y. Mar. 30, 2022).

Scottsdale's arguments to the contrary are unpersuasive. In its motion for summary judgment, Scottsdale notes that New York courts interpret the phrase "arising out of" broadly—so as to encompass any claim related to professional services, including the services provided by Aurora and its subcontractors. Def.'s Mem. in Supp. of Cross-Mot. for Summ. J. ("Def.'s Mem."), ECF No. 39-18, at 13. But the duty to defend is broader still; Scottsdale owes a duty to defend unless there is no possibility that Aurora could be held liable for property damage arising from anything other than rendering professional services. *See McCostis v. Home Insurance Co. of Indiana,* 31 F.3d 110, 112 (2d Cir. 1994) ("[A]n insurer's duty to defend is 'exceedingly broad' and is separate from and more expansive than the covenant to indemnify."). If general management of subcontractors can be considered a professional service merely because some subcontractors provide engineering services, the whole policy could be rendered illusory as "the exclusion [would] swallow the policy." *Reliance Ins. Co.*, 262 A.D.2d at 65–66. By focusing on whether any of the claims in the Underlying Action relate to professional services, Scottsdale misunderstands the question presented here: whether there is a mere *possibility* that any of the claims in the Underlying Complaint falls outside of the professional services exclusion. There is, and so Scottsdale must defend. *See Gen. Ins. Co. of Am. v. City of New York*, No. 04-CV-8946 (JCF), 2005 WL 3535113, at *6 (S.D.N.Y. Dec. 23, 2005). Whether the

property damage is ultimately tied to professional services rendered by Aurora is a question of indemnity that is not before the Court.

Accordingly, because conduct challenged in the Underlying Complaint potentially falls outside of the professional services exclusion, the exclusion does not absolve Scottsdale of a duty to defend Aurora in the Underlying Action.

**C. Scottsdale's policy is primary to Travelers' policy.**

Finally, Travelers argues that based on the terms of Aurora's contract with ADCO, the Scottsdale Policy is primary to the Travelers Policy. The Aurora-ADCO contract provides that "[c]overage for the additional insureds shall apply as primary and non-contributory insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insureds." Aurora-ADCO Contract at 59. Further, the Travelers Policy states that any coverage under that policy shall be in excess to coverage provided by any other policy where Aurora has been added as an additional insured. ECF No. 37-3 at 30. Scottsdale does not dispute that the Travelers Policy is in excess to the Scottsdale Policy if the Court finds that Aurora is entitled to coverage under the Scottsdale Policy, or that it is entitled to reimbursement of Travelers' costs defending Aurora in the Underlying Action. Accordingly, Travelers is entitled to judgment that Scottsdale's duty to defend Aurora in the Underlying Action is primary and attaches before the duty Travelers owes under its policy. *See In re UBS AG Secs. Litig.*, No. 07-cv-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments made by its opponent that it fails to address).

Because Scottsdale's policy is primary, Travelers is also entitled to reimbursement of costs associated with defending Aurora in the Underlying Action. *See United Parcel Serv. v. Lexington Ins. Grp.*, 983 F. Supp. 2d 258, 267–68 (S.D.N.Y. 2013) ("Where an insurer breaches the duty to defend, it must pay damages in the form of attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action.").

## IV. Conclusion

For the reasons explained above, I respectfully recommend that the Court grant Travelers' motion for summary judgment and deny Scottsdale's motion for summary judgment.

Objections to this report and recommendation must be filed within fourteen (14) days of service. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision") (quotation marks omitted).

SO RECOMMENDED.

/s/ Clay H. Kaminsky__________
CLAY H. KAMINSKY
United States Magistrate Judge

Dated: August 25, 2026
Brooklyn, New York